IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOHAMMED REAZ SHAHEED,

              Petitioner,              CV-07-1346-ST

      v.                                  OPINION AND ORDER

MICHAEL B. MUKASEY, United State Attorney
General, Department of Justice; ROBERT S.
MUELLER, Director, and MICHAEL A.
CANNON, Chief of National Name Check
Program, Federal Bureau of Investigation;
MICHAEL CHERTOFF, Secretary, Department of
Homeland Security, WILLIAM MCNAMEE,
Portland District Director, and EMILIO
GONZALES, Director, United States Citizenship
and Immigration Services,

              Respondents.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Petitioner, Mohammed Raez Shaheed ("Shaheed"), filed a Complaint on September 11,

2007, seeking declaratory, injunctive and mandamus relief under the Declaratory Judgment Act

1 - OPINION AND ORDER

("DJA"), 28 USC § 2201, the Administrative Procedures Act ("APA"), 28 USC § 701, and the Mandamus and Venue Act ("MVA"), 28 USC § 1361.  His Complaint alleges three claims:  a request for a declaratory judgment (Count 1); violations of the APA (Count 2); and a Due Process violation (Count 3).  The gravamen of these claims focuses on the more than three-year delay in adjudicating Shaheed's application for naturalization.  This suit seeks to prod respondents into taking action on his application.

Before this court are the parties' cross-motions for summary judgment (dockets #18 & #20).  All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).[1]

## JURISDICTION

Shaheed asserts that this court has subject matter jurisdiction pursuant to 28 USC § 1331, 28 USC § 2201, 5 USC § 701 and 28 USC § 1361.  Although their Answer denies that this court has jurisdiction, respondents' motion does not address this issue.  In any event, this court has previously approved the exercise of jurisdiction to address claims of unreasonable delay in processing applications for naturalization.  *See Lazli v. U.S. Citizenship and Immigration Services*, 2007 WL 496351 (D Or Feb. 12, 2007) (Order adopting Findings and Recommendations).  Many district courts have come to opposite conclusions on this issue,[2] but it appears that an equal, if not greater, number of courts have found that jurisdiction is provided by

---

[1] Pursuant to LR 7.1(d)(1), this court determines that this motion may be decided without oral argument.  Therefore, the oral argument scheduled for April 4, 2008, is stricken from the calendar.

[2] *See Omar v. Mueller*, 501 F Supp2d 636 (D NJ 2007); *Ibrahim v. Chertoff*, 529 F Supp2d 611 (EDNC 2007); *Badier v. Gonzales*, 475 F Supp2d 1294 (ND Ga Dec. 1, 2006); *Alzuraiki v. Heinauer*, 2008 WL 413861 (D Neb Feb. 13, 2008)*; Wang v. Gonzales*, 2008 WL 45492 (D Kan Jan. 2, 2008); *Mighri v. Gonzales*, 2007 WL 4463590 (ED Pa Dec. 19, 2007); *Sinha v. Upchurch*, 2007 WL 4322225 (ND Ohio Dec. 7, 2007)*; Dairi v. Chertoff*, 2007 WL 3232503 (SD Cal Nov. 1, 2007); *Antonishin v. Keisler*, 2007 WL 2788841 (ND Ill Sept. 20, 2007); *Alhamedi v. Gonzales*, 2007 WL 1573935 (SD NY May 30, 2007).

a combination of the APA and 28 USC § 1331, or the MVA.[3] This court will continue to follow *Lazli* and finds that it has jurisdiction pursuant to the MVA which grants this court "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 USC § 1361; *Lazli*, 2007 WL 496351 at *8.[4]

## **STANDARDS**

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

---

[3] *Kaplan v. Chertoff*, 481 F Supp2d 370 (ED Pa 2007); *Alkenani v. Barrows*, 356 F Supp2d 652 (ND Tex 2005); *Sidhu v. Chertoff*, 2008 WL 540685 (ED Cal Feb. 25, 2008); *Dawoud v. Dep't of Homeland Security*, 2007 WL 4547863 (ND Tex Dec. 26, 2007)*; Bodomov v. US*, 2007 WL 4373052 (ED Pa Dec. 14, 2007); *Moretazpour v. Chertoff*, 2007 WL 4287363 (ND Cal Dec. 5, 2007); *Assadzadeh v. Mueller*, 2007 WL 3252771 (ED Pa Oct. 31, 2007)*; Al Daraji v. Monica*, 2007 WL 2994608 (ED Pa Oct. 12, 2007); *Mocanu v. Mueller*, 2007 WL 2916192 (ED Pa Oct. 3, 2007); *Shaat v. Klapakis*, 2007 WL 2768859 (ED Pa Sept. 21, 2007)*; Sharawneh v. Gonzales*, 2007 WL 2684250 (ED Pa Sept. 10, 2007)*; Elhaouat v. Mueller*, 2007 WL 2332488 (ED Pa Aug. 9, 2007); *Ajmal v. Mueller*, 2007 WL 2071873 (ED Pa July 17, 2007); *Anjum v. Hansen*, 2007 WL 983215 (SD Ohio March 28, 2007).

[4] In addition, numerous courts have found jurisdiction to address delays in the processing of adjustment of status applications. *See Sidhu*, 2008 WL 540685 at *5 n2 (listing cases); *Zagrebelny v. Frazier*, 2008 WL 624072, *5 n5 (D Minn March 4, 2008) (same).

3 - OPINION AND ORDER

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted).

## BACKGROUND

### I.    Application Process

Title V of the Immigration Act of 1990 provides that a person who has been lawfully admitted to the United States for permanent residence is eligible to become a citizen upon establishing five years of continuous residence in the United States, including continuous residence from the date of the application up to the time of admission to citizenship, and upon a showing of good moral character. 8 USC § 1427(a). The Attorney General has the sole authority to grant naturalization. 8 USC § 1421(a). The U.S. Citizenship and Immigration Service ("USCIS") acts on behalf of the Attorney General in processing naturalization applications. The application process has four steps: (1) the submission of an application to the USCIS on Form N-400 (8 USC § 1445(a), 8 CFR § 334.2); (2) an investigation and background check (8 USC § 1446(a), 8 CFR § 335.1); (3) an examination (8 USC § 1446(b), 8 CFR § 335.2); and (4) the administration of the oath of allegiance (8 USC § 1448(a)).

If the application is denied, the applicant may appeal the decision and request a hearing before an immigration officer. 8 USC § 1447. After exhausting this administrative review, the applicant may seek judicial review in federal district court for the district in which the applicant resides. 8 USC §1421(c); 8 CFR § 336.9. Judicial review is also available if the USCIS fails to make a determination within 120 days of the initial examination of the applicant. 8 USC § 1447(b).

4 - OPINION AND ORDER

In recent years, step two has become the primary source of delay in this process as the USCIS is not permitted to expend any funds on the adjudication of applications until the Federal Bureau of Investigation ("FBI") confirms that a full background check has been completed. Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, Pub. L. 105-119, 111 Stat. 2448, Tit. I (Nov. 26, 1997); 8 USC § 1446 note; 8 CFR § 335.2. According to the USCIS, the background check includes three parts: (1) a FBI fingerprint check for relevant criminal history records; (2) a check against the Border Inspection System ("IBIS") managed by the Department of Homeland Security ("DHS"); and (3) an FBI name check, which is run against FBI investigative databases containing over 99.6 million records. Heinauer Decl., ¶ 8; Canon Decl., ¶ 9.

The FBI fingerprint check is usually completed within 24 hours but it expires after 15 months. Plaintiff's Ex. 5, pp. 4-5. If an application is pending for longer than 15 months, the applicant must resubmit fingerprints. Heinauer Decl., ¶ 12.

The FBI name check takes much longer than the fingerprint check and consists of four stages: (1) batch processing; (2) name searching; (3) file review; and (4) dissemination. Cannon Decl., ¶ 13. The process begins when the USCIS submits a name check request to the FBI National Name Check Program Section ("NNCPS") on magnetic tapes holding up to 10,000 names per tape. *Id*. This causes an automated search which returns a "No Record" result within 48-72 hours in approximately 68% of USCIS requests. *Id*. The second stage requires an NNCPS employee to manually enter an applicant's name. Typically this is completed within 30-60 days and results in a "No Record" result for an additional 22% of USCIS requests. *Id*, ¶ 14. Those names that still have produced "hits" after the first two stages (about 10% of USCIS requests) continue on to the third stage where NNCPS employees must retrieve whatever record

5 - OPINION AND ORDER

is creating the hit and review it to determine whether it contains derogatory information about the applicant. *Id*, ¶¶ 15-17. The FBI processes its name checks on a first-in, first-served basis. *Id*, ¶ 18. However, the USCIS submits some requests to be handled on an expedited basis. *Id*, ¶ 19.

Over the past few years, a number of factors have contributed to the slowing of the name check process. First, the number of name checks the FBI must process has grown steadily since September 11, 2001. For fiscal year 2006 the FBI processed 3.4 million name checks; prior to September 11, 2001, it processed approximately 2.5 million per year. *Id*, ¶ 21. Additionally, the protocol for conducting name checks was changed in November 2002 to include more records, resulting in an increase in the number of hits. *Id*, ¶ 23. An applicant with a common name further complicates the process. *Id*, ¶ 28. Finally, the records needed to complete a name check at step three may be located at one of over 265 possible locations across the country. *Id*, ¶ 29.

As of January 23, 2008, the USCIS Portland District Office was adjudicating N-400 applications filed on or before May 29, 2007. Plaintiff's Ex. 3, pp. 10-11. Shaheed's application is part of a growing number of applications that have been pending for over 33 months.

## II.    Shaheed's Application

Shaheed is a citizen of Bangladesh who holds three degrees from the University of Texas and currently works for Intel as a Staff Engineer. Shaheed Decl., ¶ 2. Shaheed entered the U.S. in 1985 and remained on a student visa until 1996. *Id*, ¶ 3. After 1996, Shaheed resided in the U.S. on a foreign worker's visa until May 23, 2000, when the USCIS adjusted his status to lawful permanent resident. *Id.* Since November 1996, Shaheed has lived in Oregon with his wife, who is a naturalized citizen, and two children, both of whom were born in the U.S. *Id*, ¶ 4.

On February 25, 2005, Shaheed applied for naturalization by submitting Form N-400 to the USCIS Nebraska Service Center. *Id*, ¶ 5; Plaintiff's Ex. 1, p. 3.

On March 8, 2005, the USCIS Nebraska Service Center sent Shaheed a receipt informing him that within 210 days he should expect to receive notice for an interview at the USCIS local office. Shaheed Decl., Ex. 1. On March 21, 2005, the USCIS Nebraska Service Center sent Shaheed a notice directing him to appear at the application support center in Portland, Oregon, on April 22, 2005 to have his fingerprints taken. *Id*, Ex. 2. Shaheed complied. Shaheed Decl., ¶ 7.

The USCIS sent Shaheed's fingerprints to the FBI on April 22, 2005, for a fingerprint check. The FBI ran the check which returned a result of "non-ident," meaning that the FBI had no fingerprint-supported records in their database related to Shaheed. The FBI reported these results back to the USCIS that same day. Plaintiff's Ex. 5, p. 5.

Shaheed's preliminary IBIS check has been completed and any additional checks will be conducted by the examining officer at the time of his examination. Heinauer Decl., ¶ 13. The FBI received the name check request for Shaheed from the USCIS on March 19, 2005.

Since April 22, 2005, when the USCIS took his fingerprints, Shaheed has received no notice from the USCIS concerning his application. Shaheed has made multiple attempts to learn its status. *Id*, ¶¶ 11-16. At one point, USCIS officer Karen Williams told Shaheed that she was trying to expedite his case, but nothing came of her efforts, and there is no evidence that she submitted an expedited request to the NNCPS.

Shaheed's application now has been pending for over three years. He claims that the failure by respondents to timely process his application has injured him in several ways. First, he alleges that he is unable to travel outside the U.S. under protection of a U.S. passport.

7 - OPINION AND ORDER

Complaint, ¶ 48.  He also alleges that he is unable to vote, cannot sit on juries, and must carry a permanent resident card with him at all times.  *Id*, ¶ 19.  He further claims that the delay has resulted in the separation of his family, because his wife and children have had to return to Bangledesh to care for his sick mother, and Shaheed believes he must remain in the U.S. so long as his application is pending to continue to meet the requirement of continuous residence in the U.S.  Shaheed Decl., ¶ 18.

In their final submission on these motions, respondents advised that on March 5, 2008, the FBI notified the USCIS that it had completed Shaheed's name check and forwarded the results to the USCIS.  The USCIS maintains that it is currently analyzing this information to determine when Shaheed may be scheduled for an examination pursuant to 8 USC § 1446.  Shaheed will also need to resubmit his fingerprints as it has been over 15 months since his previous submission.  As of this date, Shaheed's case remains unadjudicated, and his application is in the oldest statistical category of pending cases according to data maintained by DHS.  DHS, *Citizenship and Immigration Services Ombudsman Annual Report*, p. 38 (June 11, 2007), *available at* http://www.dhs.gov/xlibrary/assets/CISOMB_Annual_Report_2007.pdf, last accessed March 28, 2008.

## DISCUSSION

The case comes before this court on somewhat of a unique procedural posture.  When the parties filed their motions, the FBI background check was still pending, and neither the FBI nor the USCIS could give Shaheed an estimate on the time needed to complete the check.  Now the FBI background check is complete, thus enabling the USCIS to begin adjudicating Shaheed's application.  Nevertheless, given the amount of time that has passed and the fact that Shaheed's

application still remains pending, this court will still address whether Shaheed is entitled to mandamus relief in the processing of his application.

"Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F3d 1078, 1084 (9th Cir 2003), quoting *Patel v. Reno*, 134 F3d 929, 931 (9th Cir 1998). "The extraordinary remedy of mandamus lies within the discretion of the trial court, even if the three elements are satisfied." *Oregon Natural Resources Council v. Harrell*, 52 F3d 1499, 1508 (9th Cir 1995), citing *Fallini v. Hodel*, 783 F2d 1343, 1345 (9th Cir 1986). "If a plaintiff has no legal entitlement to the relief sought, a 'clear and certain' claim cannot exist, and the writ will not lie." *Lowry v. Barnhart,* 329 F3d 1019, 1021 (9th Cir 2003).

Respondents do not contest the first element since Shaheed timely filed his N-400 application and complied with all requests made by the USCIS with respect to completing his application. Shaheed's claim is clear and certain.

Respondents also do not contest the third element. At this juncture, no other remedy is available to Shaheed to expedite the processing of his application process. His only option is to continue to wait until the UCSIS schedules his examination. As stated in *Lazli*, "continuing to wait indefinitely . . . is not an adequate remedy." 2007 WL 496351 at *14.

Respondents also concede part of the second element. *Lazli* court separated the second element in the mandamus analysis into two inquiries: first, whether respondents have a nondiscretionary duty to process naturalization applications within a reasonable time; and second, whether respondents violated this duty by taking an unreasonable amount of time to

process the application.  Respondents have not argued the lack of a duty, but instead contend that the delay in processing Shaheed's application for over three years is reasonable.

Respondents rely on the factors set forth in *Telecomm. Research and Action Ctr. v. FCC ("TRAC")*, 750 F2d 70, 80 (DC Cir 1984), *cited with approval in Independence Mining Co. v. Babbitt*, 105 F3d 502, 507 (9th Cir 1997).  As *Lazli* noted, this test was developed in the context of determining the reasonableness of agency delay under § 706 of the APA, but, nevertheless, is still useful in deciding the same issue under the mandamus statute.  *Lazli*, 2007 WL 496351 at *11.  This is because "the Supreme Court has construed a claim seeking mandamus under the MVA, 'in essence,' as one for relief under § 706 of the APA."  *Independence Mining*, 105 F3d at 507, citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 US 221, 230 n4 (1986).

However, it is not necessary for this court to analyze these factors in detail in order to find that the delay in this case is unreasonable.  As found In *Lazli*, "by failing to complete security checks, conduct a naturalization interview and adjudicate the N-400 application for over 27 months, the defendants have violated their nondiscretionary duty to adjudicate Lazli's N-400 application within a reasonable time."  2007 WL 496351 at *18.  As this case involves substantially similar facts and an even greater delay, it dictates the same result unless respondents are able to persuade this court otherwise.  They have not done so.

Respondents attempt to distinguish *Lazli* because in that case they failed to provide any evidence "to support a finding that the delay in this case by the [USCIS] to complete relatively uncomplicated tasks is outside the bounds of reasonable agency control."  *Id*.  Here respondents maintain that they have provided ample evidence to justify the delay in processing Shaheed's application.

Respondents have submitted the declarations of two officials: defendant Michael A. Cannon, Section Chief of the NNCPS, and F. Gerard Heinauer, Director of the Nebraska Service Center for the USCIS. These officials attempt to explain the reason behind the delay in processing Shaheed's application. However, they provide no evidence specific to Shaheed's application. Instead, they recite general statistics and facts which pertain to all applications pending before their agencies and submit information about the efforts the agencies are making to improve the efficiency of the process. This generic evidence is insufficient. *See Aslam v. Mukasey*, 531 F Supp2d 736, 744 (ED Va 2008) (finding "generic description of the fourth stage [of the name search] process" insufficient to meet the minimal burden of offering an explanation for the delay). It does not enable the court to ascertain the specific reasons why Shaheed's name check has taken so long to process.

Many of respondents' arguments concerning the backlog of name checks at the NNCPS lose their force now that the FBI name search is complete, as this step no longer prevents the USCIS from adjudicating Shaheed's application. Plus, as respondents' recent efforts to streamline the process demonstrates, it was not outside of respondents' control to modify the process to reduce the delay experienced by applicants such as Shaheed. *See* Cannon Decl., ¶¶ 31-38. Additionally, the USCIS is capable of requesting expedited treatment of name check requests and could do so for those cases, such as Shaheed's, that remain pending after a considerable period of time. *See* Heinauer Decl., ¶¶ 18-19. It is the statutory duty of respondents to process name checks and adjudicate naturalization applications within a reasonable time; they, and not the applicants, bear the burden of compliance with this duty. *See Tang v. Chertoff*, 493 F Supp2d 148, 158 (D Mass 2007) (finding that cost of delay in the system should fall on the defendant agencies and not on the immigrant applicants and ordering DHS,

11 - OPINION AND ORDER

USCIS and FBI to adjudicate adjustment of status application within 40 days). While this court will not dictate what policies or procedures respondents should adopt in seeking to comply with their duty, it will hold them accountable when they fail to do so.

Finally, respondents proffer the completion of the name check as additional evidence that mandamus relief is inappropriate because it demonstrates that they are actively processing Shaheed's application. This argument ignores the fact that after 37 months Shaheed is still waiting for USCIS to adjudicate his application. This court will not deny him relief simply because respondents now maintain that his application is one step closer to completion then it was at the beginning of this lawsuit. Now that the name check is complete, no factors outside of the USCIS's control prevent adjudication of Shaheed's application in compliance with this court's order. The USCIS now, more than ever, is bound to proceed with the adjudication process. 8 CFR § 335.2(b).

Given the extensive delay at issue in this case, this court finds that respondents have violated their duty to adjudicate Shaheed's application in a reasonable time. Therefore, this court will grant his request for mandamus relief. Accordingly, it need not address Shaheed's alternative claims under the APA or Due Process Clause.

## ORDER

For the above reasons, Shaheed's motion for summary judgment (docket #18) is GRANTED, and respondents' motion for summary judgment (docket #20) is DENIED. The USCIS is ordered to adjudicate Shaheeds' N–400 application within 60 days and file a copy of the adjudication with the court within five business days after the adjudication.

DATED this 2nd day of April, 2008.

/s/ Janice M. Stewart_____

Janice M. Stewart
United States Magistrate Judge

13 - OPINION AND ORDER